UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RAYMOND E. CONWAY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-794-JD-MGG |
| INDIANA STATE PRISON, et al., | |
| Defendants. | |

OPINION AND ORDER

Raymond E. Conway, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 12.) Pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. The court must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

Mr. Conway is presently housed at Indiana State Prison ("ISP"). As with his original complaint, he alleges that he is danger from other inmates at the prison. He was previously granted leave to proceed on a claim for injunctive relief against the Warden of ISP related to his need to be placed in protective custody. The amended complaint makes clear that he was transferred to protective custody on October 9, 2020. (ECF 12 at

9.) However, Mr. Conway seeks to add claims against several defendants stemming from events that occurred before his transfer.

He alleges that on April 17, 2020, he was removed from protective custody and transferred to D-cellhouse, a restrictive housing unit, after Pam Bane, the unit team manager, and Ms. Bus (first name and title unknown), wrote a conduct report accusing him of assaulting another inmate.[1] He claims that he should have only been charged with "fighting" rather than "assault." He further claims that Disciplinary Hearing Board Officer Houston (first name unknown) prejudged his guilt and refused to let him call any witnesses during the disciplinary hearing.

He further claims that while in the D-cellhouse, he had problems with other inmates, including Jason Long, who threatened to "gun [him] down"—meaning "he would throw pee and poop" on him—if he did not give Long various items of personal property. Mr. Conway asked Mr. Snider (first name and title unknown) to be moved to protective custody due to this threat, but his request was denied. Thereafter, Long stole his fan, a pair of shoes, and various other items. Long then began telling other inmates on the floor that Mr. Conway had previously worked as a correctional officer in Elkhart County, which was not true. An inmate named "Big Pete" threatened to kill him as a result. In the ensuing weeks Long sent him several "kites," or notes, stating that "he had 3 knives and a spear and that when he caught me he would try to kill me." Mr. Conway

---

[1] He attaches the conduct report, which reflects that Ms. Bane observed him on the prison surveillance camera "punching, kicking, and kneeing" another inmate. (ECF 12-1 at 2.) He stated in a document submitted to prison staff that this inmate had been "provoking [him] for months." (ECF 12-1 at 21.)

claims that he complained to Internal Affairs and a "range officer" about these threats, but he does not identify anyone by name.

In early August 2020, he was moved to another area of D-cellhouse. After a few days he received another "kite" stating that if he did not turn over his commissary items "there would be issues." He does not state who sent him the note. He turned over $60 worth of food, earbuds, a television remote, and other items to an inmate acting as a go-between. He then spoke to Ms. Suda (first name unknown), the D-cellhouse counselor, and told her that he was being threatened and extorted. She gave him a theft report and a protective custody request. He filled out the paperwork but "never heard anything back." Shortly thereafter, he was given another "kite" by members of the Vice Lords telling him to turn over his television or they would "gun [him] down." He turned over the television set, and also filled out another protective custody request (it appears with Ms. Suda), but this too was ignored.

On or about August 27, 2020, Sergeant Wolford (first name unknown) came to Mr. Conway's cell to conduct a search. Mr. Conway claims that he told Sergeant Wolford he was being threatened and extorted. Sergeant Wolford gave him "paperwork" to complete, which he did, also providing Sergeant Wolford with a two-page letter describing what had been occurring. Nothing happened, however, and Mr. Conway continued to be threatened and extorted by other inmates during September and early October 2020. He complained to numerous prison staff members about what was happening, but was told that Todd Marsh, an internal affairs employee, had

already investigated his claims. The implication from the complaint is that Mr. Marsh found no reason for concern.

Mr. Conway further alleges that between October 4, 2020, and October 7, 2020, he was not given any meals at dinnertime because the inmate worker handing out meals purposely skipped him. He complained to Lieutenant Ball (first name unknown) about what was happening and asked to be moved. She said he could not be moved but offered to get him a dinner tray. Mr. Conway responded that he would "harm" himself if she did not move him. Lieutenant Ball then had another officer move him to a cell on a different floor. During the move, another inmate threw urine and feces on Mr. Conway. Lieutenant Ball gave him another protective custody request, which he completed. Two days later, he was moved to protective custody, where he remains at present. Based on these events, he seeks injunctive relief and money damages against a host of defendants.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious,

4

culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

Here, Mr. Conway was previously granted leave to proceed on a claim for injunctive relief against ISP Warden Ron Neal related to his need to be in protective custody. Because he has alleged factual content from which it can be plausibly inferred that he is danger from other inmates if he were to return to general population, he will be permitted to proceed against the Warden, who has both the authority and the responsibility to ensure that inmates are protected from harm by other inmates as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Likewise, giving him the inferences to which he is entitled at this stage, he alleges that Mr. Snider, Sergeant Wolford, Mr. Marsh, and Ms. Suda all had direct knowledge that he was at risk of harm from other inmates, but they allegedly did nothing to protect him. As a result, he was extorted and threatened for months and ultimately assaulted with bodily waste by another inmate. He will be permitted to proceed on a claim for damages against these defendants.

He also names Officer Ferino (first name unknown) as a defendant, but his only alleged involvement occurred on October 7, 2020, when Mr. Conway asked him for help as a result of the inmate failing to give him a dinner tray. Mr. Conway alleges that Officer Ferino called for a lieutenant numerous times on his radio but "was ignored." Lieutenant Ball finally responded to his calls and addressed the situation. The court cannot discern any manner in which Officer Ferino was deliberately indifferent to Mr. Conway's health or safety. Similarly, he names Lieutenant Ball as a defendant, but her

5

involvement was also limited to October 7, 2020, when she offered to get Mr. Conway a dinner tray after he complained that he had not been given one by the inmate worker. She also immediately had him moved after he threatened to harm himself if she did not remove him from the floor. Although Mr. Conway was assaulted with bodily waste during the move, there is nothing in the complaint from which it can be plausibly inferred that Lieutenant Ball had prior knowledge that Mr. Conway was at risk of harm from that particular inmate (who he does not name), or that she otherwise acted with deliberate indifference to his health or safety in attempting to move him off the floor in response to his concerns. After the assault, she provided him with another protective custody form, and a few days later, he was actually placed in protective custody. He has not alleged a plausible Eighth Amendment claim against either defendant.

As for the other defendants, he names the Indiana State Prison, but this is a building, not a person or a policy-making body that can be held liable under 42 U.S.C. § 1983. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). He also sues Ms. Bane and Ms. Bus, who wrote the conduct report resulting in his move to D-cellhouse. He appears to admit that he was fighting with another inmate and, at most, alleges that these defendants charged him with the wrong disciplinary offense. There is no indication from the complaint that these two defendants were personally aware that Mr. Conway was in danger if he was moved to D-cellhouse or that they had any involvement in the subsequent events he describes. He has not alleged a plausible constitutional claim against them.

6

Relatedly, he names Officer Houston, who allegedly violated his due process rights in the course of the disciplinary proceeding by prejudging his guilt and refusing to permit him to call any witnesses. Officer Houston is not alleged to have been involved in the failure to protect Mr. Conway from harm by other inmates, and the allegations against him regarding due process violations are not sufficiently related to Mr. Conway's other allegations to proceed in the same lawsuit. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits[.]"). Mr. Conway is free to pursue his claim against Officer Houston in a separate lawsuit, but not in this one. Any new lawsuit asserting this claim will be subject to the usual constraints of the Prison Litigation Reform Act, including payment of a separate filing fee. *See* 28 U.S.C. § 1915(b).

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Ron Neal in his official capacity as the Warden of Indiana State Prison on an Eighth Amendment claim to obtain permanent injunctive relief related to his need for protection from other inmates;

(2) GRANTS the plaintiff leave to proceed against Mr. Snider, Sergeant Wolford, Todd Marsh, and Ms. Suda in their personal capacities for monetary damages for failing to protect him from harm by other inmates in violation of the Eighth Amendment;

(3) DISMISSES the unrelated claim against Officer Houston without prejudice to it being raised in a separate lawsuit;

(4) DISMISSES all other claims;

(5) DISMISSES Indiana State Prison, Pam Bane, Ms. Bus, Officer Ferino, and Lieutenant Ball as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Warden Ron Neal, Mr. Snider, Sergeant Wolford, Mr. Marsh, and Ms. Suda and to send them a copy of this order and the amended complaint (ECF 12) pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(8) ORDERS Warden Ron Neal, Mr. Snider, Sergeant Wolford, Mr. Marsh, and Ms. Suda to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 20, 2020

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT