UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RAYMOND E. CONWAY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-794-JD-MGG |
| INDIANA STATE PRISON, et al., | |
| Defendants. | |

OPINION AND ORDER

Raymond E. Conway, a prisoner proceeding without a lawyer, moves for leave to amend his complaint a second time, and also submits a proposed second amended complaint. (ECF 41, ECF 41-1.) His amendment is timely under the scheduling order. (*See* ECF 36.) Defendants object to the motion, arguing that the proposed amendment is futile. (ECF 43.) The court agrees with defendants in part, but disagrees that the proposed amendment is futile as to the addition of defendants Pam Bane and Correctional Officer Graham (first name unknown). In the interest of justice, and pursuant to Fed. R. Civ. P. 15(a)(2), the motion is granted. The court will proceed to screen the second amended complaint pursuant to 28 U.S.C. § 1915A.

To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

determining whether this standard is met, the court must bear in mind that "[a] document filed pro se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citation omitted).

In September 2020, Mr. Conway filed his original complaint alleging that he is in danger from other inmates at Indiana State Prison ("ISP"). On September 23, 2020, he was granted leave to proceed on a claim for injunctive relief against the Warden of ISP related to his ongoing need for protection from other inmates. (ECF 3.) In early November 2020, he filed an amended complaint alleged that he had since been transferred to the protective custody unit. (ECF 12 at 9.) Based on the allegations in his amended complaint, the court permitted him to add claims for damages against defendants Schneider, Siuda, Wolford, and Marsh stemming from events that occurred before his transfer.[1] (ECF 14.) The court dismissed several of his other claims, including claims against Indiana State Prison, Pam Bane, Assistant Warden Dawn Buss, Correctional Officer Ferino (first name unknown), and Lieutenant Ball (first name unknown). (*Id.*)

In his second amended complaint,[2] he again alleges that as far back as 2018, he has had problems with other inmates at ISP and was in long-term protective custody as

---

[1] Mr. Conway named "Mr. Snider" as a defendant in the earlier complaints; however, this defendant's true name is Joseph Schneider. (ECF 20 at 1.) Likewise, he identified Amber Siuda as "Ms. Suda" in his earlier pleadings. (*See id.* at 2.) The court uses the correct spelling of their names in this opinion.

[2] The court notes that Mr. Conway's complaint is not on the approved prisoner complaint form and in places his handwriting is difficult to decipher. The court has made every effort to discern the relevant facts and to give this filing liberal construction.

2

a result. He further claims that on April 17, 2020, he was removed from protective custody and transferred to D-cellhouse, a restrictive housing unit, after being found guilty of a disciplinary offense. While in the D-cellhouse, he immediately began having problems with other inmates, including Jason Long, who threatened to assault him with bodily waste if he did not give Long various items of personal property. Mr. Conway asked defendant Schneider to be moved back to protective custody due to this threat, but his request was denied. Thereafter, Long stole several of his personal belongings. Long also began telling other inmates on the floor that Mr. Conway had previously worked as a correctional officer, which was not true. Another inmate threatened to kill him as a result. Mr. Conway claims that he complained to defendants Schneider, Siuda, Wolford, and Marsh about these threats, but they did nothing to help him.

In early August 2020, he was moved to another area of D-cellhouse. However, he claims he continued to be harassed by other inmates who mistakenly believed he had previously worked as a correctional officer. He was forced to give these inmates food, electronics, and other personal belongings to avoid being attacked. He spoke to defendants Marsh, Wolford, and Siuda and told them he was being threatened and extorted. They allegedly ignored his concerns.

On October 7, 2020, he complained to Lieutenant Ball about what was happening and asked to be moved. She initially told him he could not be moved, but he threatened to harm himself if she did not move him. Lieutenant Ball then immediately moved him to a cell on a different floor. During the move, another inmate threw bodily waste on Mr. Conway. A few days later, he was moved to protective custody, where he

3

remains at present. Based on these events, he seeks money damages and other relief against a host of defendants.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

Mr. Conway was previously granted leave to proceed on a claim for injunctive relief against Warden Neal related to his need to be in protective custody. Because he has alleged factual content from which it can be plausibly inferred that he would be in danger if he were to return to the prison's general population, he will again be permitted to proceed against the Warden, who has both the authority and the responsibility to ensure that inmates are protected from harm by other inmates as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Likewise, giving him the inferences to which he is entitled at this stage, he has again alleged that defendants Schneider, Wolford, Marsh, and Siuda all had direct

4

personal knowledge that he was at risk of harm from other inmates but allegedly did nothing to protect him. As a result, he was extorted and threatened for months and ultimately assaulted with bodily waste by another inmate. He will be permitted to proceed on a claim for damages against these defendants.

He also seeks to add claims against several defendants. As to Pam Bane, he alleges that she is the "team manager" of the protective custody unit. He alleges that it is part of her job duties to investigate inmates' safety concerns. He further claims that she is the one who had him moved out of the protective custody unit, after which he told her several times that he was in danger and was being extorted. She allegedly ignored him and did nothing to address his concerns. Additionally, he alleges that he complained directly to Officer Graham about the threats, and provided the names of individuals who were threatening him. He claims he turned in two written requests for protective custody to her, but he believes she did not give these forms to the appropriate staff members or otherwise take any steps to protect him. After this, he was extorted and assaulted with bodily waste. He will be permitted to proceed against Pam Bane and Officer Graham on a claim for damages.

He also seeks to add Lieutenant Ball as a defendant. According to the complaint, her involvement was limited to October 7, 2020, when she immediately moved Mr. Conway after he told her was in danger and threatened to harm himself if he was not moved. Mr. Conway claims he was assaulted with bodily waste during the move and believes that Lieutenant Ball should be held responsible. However, there is nothing in the complaint from which it can be plausibly inferred that Lieutenant Ball knew that

5

particular inmate would assault Mr. Conway if they walked by his cell, or that she otherwise acted with deliberate indifference to his safety in attempting to immediately move him off the floor in response to his concerns. He has not alleged a plausible Eighth Amendment claim against Lieutenant Ball.

He also seeks to add claims for damages against Assistant Warden Dawn Buss and Warden Neal, but at most he alleges that he wrote them letters about his safety concerns and they did not respond. This does not give rise to an Eighth Amendment claim. As the Seventh Circuit has explained:

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [a resolution]. That can't be right.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). There is nothing in the complaint to suggest that the Warden or Assistant Warden were personally involved in these events, or that they made the decisions about Mr. Conway's housing assignments that he

6

claims led to him being extorted and assaulted. Mr. Conway will not be permitted to proceed against these high-ranking officials on a claim for damages.[3]

He also sues the Indiana Department of Correction, but this defendant has Eleventh Amendment immunity. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019). Finally, to the extent he is trying to initiate criminal charges against any of the defendants and/or the inmates who took his property, he has no authority to do so as a private citizen. *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1998) ("[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General."). These claims will be dismissed.

For these reasons, the court:

(1) GRANTS the motion to amend (ECF 41) and DIRECTS the clerk to docket the proposed second amended complaint (ECF 41-1) as a separate docket entry;

(2) DIRECTS the clerk to add Pam Bane and Correctional Officer Graham (first name unknown) as defendants;

(3) GRANTS the plaintiff leave to proceed against Mr. Schneider, Sergeant Wolford, Todd Marsh, Ms. Siuda, Pam Bane, and Correctional Officer Graham in their personal capacities for monetary damages for failing to protect him from harm by other inmates in violation of the Eighth Amendment;

---

[3] Mr. Conway lists Correctional Officer Ferino on the caption of his second amended complaint, but does not include any factual content plausibly alleging that this officer violated his Eighth Amendment rights. (*See* ECF 41-1 at 1.) He was previously denied leave to proceed against Officer Ferino, as he alleged in his first amended complaint that this officer tried to call a lieutenant numerous times on his radio after Mr. Conway asked him for help, and that Lieutenant Ball ultimately responded to his calls. (ECF 14 at 5.) To the extent he is trying to assert a claim against Officer Ferino in his second amended complaint, he has not done so.

(4) GRANTS the plaintiff leave to proceed against Warden Ron Neal in his official capacity on a claim for permanent injunctive relief related to his need for protection from other inmates;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal, Mr. Schneider, Sergeant Wolford, Todd Marsh, Ms. Siuda, Pam Bane, and Correctional Officer Graham at Indiana Department of Correction and to send them a copy of this order and the second amended complaint pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(8) ORDERS Warden Ron Neal, Mr. Schneider, Sergeant Wolford, Mr. Marsh, Ms. Siuda, Pam Bane, and Correctional Officer Graham to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 11, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

8