UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAYMOND E. CONWAY,

    Plaintiff,

    v.                                  CAUSE NO. 3:20-CV-794-JD

SNIDER, et al.,

    Defendants.

OPINION AND ORDER

Raymond Conway, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Unit Team Manager Joseph Schneider, Sergeant Devin Wolford, Todd Marsh, Amber Siuda, Pamela Bane, and Correctional Officer Chelsea Grams "in their personal capacities for monetary damages for failing to protect him from harm by other inmates in violation of the Eighth Amendment[.]" ECF 49 at 7. Second, he is proceeding "against Warden Ron Neal in his official capacity on a claim for permanent injunctive relief related to his need for protection from other inmates[.]" *Id.* at 8. Defendants Warden Neal, Unit Team Manager Schneider, Sergeant Wolford, and Correctional Officer Grams filed a motion for summary judgment. ECF 94.[1] Conway filed a response, and the defendants filed a reply. ECF 103, 104. The summary judgment motion is now fully briefed and ripe for ruling.

---

[1] Defendants Marsh, Siuda, and Bane have not moved for summary judgment.

I.   **FACTS**

Conway, a prisoner at Indiana State Prison ("ISP"), was housed in ISP's general population from December 2016 until May 2018, when he was placed in protective custody due to various gang-related incidents. ECF 94-1 at 24-25, 39-41. In April 2020, Conway was removed from protective custody after he got into a fight with another protective custody inmate. *Id.* at 25-34. He was found guilty of a battery offense and sent to a disciplinary segregation unit. *Id.* at 33-35. Specifically, he was given 90 days of disciplinary segregation in D-cell house east, along with 90 days of administrative segregation in D-cell house west. *Id.*; ECF 103 at 3. The disciplinary segregation unit limits an inmate's access to other inmates and provides prison staff control over their interactions. ECF 9-1 at 2. Specifically, inmates in the disciplinary segregation unit are kept separate from the members of the general population, have their meals and medication delivered to their cells, and are handcuffed and escorted by correctional officers whenever they leave their cells. *Id.* However, the disciplinary segregation unit contains inmate "range tenders," who are offenders that are permitted to move freely throughout the unit to deliver meal trays and perform other duties. ECF 103 at 3.

Approximately one week after Conway was transferred to the disciplinary segregation unit, the inmate in the cell next to Conway, Jason Long, mistakenly received Conway's mail that was marked with a protective custody unit address. ECF 94-1 at 38-39. After learning that Conway had come from protective custody, Long accused Conway of being a snitch and began sending him threatening notes to extort him for his property. *Id.* at 41-42. Specifically, Long threatened to "gun" Conway down with bodily

2

waste or stab him when he passed his cell unless he gave him his property. *Id.* Conway gave his property to Long so he would not tell the other inmates he had come from the protective custody unit. *Id.* at 44-46.

Several weeks after Conway arrived at the disciplinary segregation unit, he overheard a conversation between Long and another inmate, "Big Pete," regarding Long's belief that Conway had been transferred from the protective custody unit. *Id.* at 42-44. After the conversation, Big Pete came over to Conway's cell, looked in at him, and accused him of being a former correctional officer. *Id*. Both Long and Big Pete told Conway they would stab or kill him when they got an opportunity, and Conway overheard Long tell a correctional officer he would kill Conway unless he was moved to a different cell. *Id.* at 42-43. Conway also began receiving threats from an inmate named "Polo," who was associated with Long and Big Pete. *Id.* at 46-47. Conway filed a protective custody request during this time, but never received any response. *Id.* at 46.

Around June 15, 2020, Unit Team Manager Schneider transferred Conway from the disciplinary segregation unit, located in the east side of D-cell house, to the administrative segregation unit, located in the west side of D-cell house. *Id.* at 46, 55; ECF 86 at 18. Conway believed Unit Team Manager Schneider made this change for safety and security reasons. ECF 86 at 18. Shortly after Conway's transfer to the administrative segregation unit, an inmate named "2 Cool" told Conway he had learned from Long that Conway had come from the protective custody unit and was a former correctional officer. ECF 94-1 at 54-56. Conway then received a note from an

3

inmate named DJ threatening to hurt him unless he gave him food or money. *Id.* at 51-54. The note was passed to Conway by a range tender. *Id.* at 52.

Around July 4, 2020, Conway wrote to Defendant Siuda, his counselor in D-cell house, informing her of threats to his safety and asking her for a protective custody form. *Id.* at 56-57. Around July 9, 2020, Conway submitted a protective custody request, asserting he was being threatened by Long, Big Pete, Polo, and other gang members. *Id.* at 59-69, 135-38. Unit Team Manager Schneider, the Unit Team Manager for D-cell house, looked into Conway's request for protective custody. *Id.* at 135. To investigate the protective custody request, Unit Team Manager Schneider looked into the incident regarding the assault that had landed Conway outside of protective custody in April 2020. ECF 82 at 4. He also spoke with staff and other unit team members in D-cell house and found no one had seen or heard of any of the issues Conway alleged. *Id.* On July 24, 2020, Unit Team Manager Schneider denied Conway's protective custody request, stating he was currently appropriately placed in the disciplinary segregation unit and that he could resubmit a protective custody request once he was off restrictive housing status. ECF 94-1 at 69-70, 135.

On August 4, 2020, Conway submitted a "Request for Interview" to Unit Team Manager Schneider, asking why he had not received any explanation for the denial of his protective custody request. ECF 103-1 at 2. On the "Request for Interview" form, Conway informed Unit Team Manager Schneider that the range tenders had been giving away his food trays to other inmates who were threatening to stab him and "gun" him down with bodily waste, he had not gotten a food tray in three days, and he

4

could not shower due to the threats. *Id.* Conway asked Unit Team Manager Schneider to review the cameras to confirm his allegations regarding the food trays, and provided the cell locations of the offenders making threats against him. *Id.* There is no indication whether Unit Team Manager Schneider reviewed or responded to this Request for Interview.

Around August 27, 2020, Sergeant Wolford came to Conway's cell to speak with him about being extorted. ECF 94-1 at 95-96, 99. After speaking with Conway, Sergeant Wolford told him to fill out another protective custody request and a theft report and continue to let him know what was going on. *Id.* at 95. The next day, Conway gave the paperwork he completed to Correctional Officer Grams, a correctional officer in the protective custody unit, to give the documents to Sergeant Wolford. *Id.* at 95-96; 139. Conway never heard back from Sergeant Wolford, and was unsure whether or not Sergeant Wolford ever received the documents. *Id.* at 96. Conway submitted another protective custody request around September 11, 2020, which was denied. *Id.* at 142.

Around October 1, 2020, Conway submitted another Request for Interview to Unit Team Manager Schneider, complaining that other inmates were extorting him and taking his property, including his food trays. ECF 103 at 8; ECF 103-1 at 9. Conway asserted the inmates had threatened to gun him down with bodily waste and stab him if he went to the shower. *Id.* Conway provided the cell locations of the inmates making the threats and stated that reviewing the cameras would prove that his property and food trays were being taken. *Id.* There is no indication whether Unit Team Manager Schneider reviewed or responded to this Request for Interview.

5

On October 7, 2020, Conway asked a lieutenant to transfer him to a different cell because 2 Cool had been threatening to kill him if he did not move off the range. *Id.* at 85-86. The lieutenant refused to move Conway, so Conway tried to hurt himself to get moved to a suicide watch cell. *Id.* at 86. After Conway hurt himself, the lieutenant ordered a correctional officer to escort him out of his cell. *Id.* While the officer was escorting Conway down the range, one of the inmates who had been threatening Conway threw bodily waste into Conway's face. *Id.* at 86. Conway was placed in a holding cell and given a protective custody request to fill out. *Id.* Conway submitted two protective custody requests stating that he was being threatened and had been struck with bodily waste while moving out of his cell. *Id.* at 86-90, 143-44. The next day, Conway received a response from Unit Team Manager Schneider that recommended approval to the protective custody unit because his safety was not guaranteed in the disciplinary segregation unit. *Id*. Specifically, Unit Team Manager Schneider responded that Conway's safety was compromised, he was unable to go to recreation, his food had been taken by other offenders, and his property had been found in the possession of other offenders. *Id.* at 89.

On October 9, 2020, Conway was moved to the protective custody unit, where he has remained ever since. *Id.* at 93, 103. Conway has not received any threats in the protective custody unit, and is not housed with any of the inmates who previously threatened him. *Id.* at 103-04.

## II. ANALYSIS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. A plaintiff proceeding on a section 1983 claim against prison officials for failure to protect must establish: "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotation marks omitted). Deliberate indifference is "something

7

approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). To prevail, the plaintiff must establish that the defendant "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756.

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Moreover, "[e]xercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Id.* at 554.

Conway is proceeding against Unit Team Manager Schneider, Sergeant Wolford, and Correctional Officer Grams "for failing to protect him from harm by other inmates," and against Warden Neal "for permanent injunctive relief related to his need for protection from other inmates[.]" Each defendant will be addressed in turn.

*Unit Team Manager Schneider*

Unit Team Manager Schneider argues summary judgment is warranted in his favor because he investigated Conway's claims and was not deliberately indifferent to his safety. ECF 95 at 12-13. Conway responds that Unit Team Manager Schneider was deliberately indifferent for denying his July 9 protective custody request without performing an adequate investigation.

The evidence shows Conway submitted a protective custody request to Unit Team Manager Schneider on July 9, 2020, in which he asserted he was receiving death threats from various inmates in the disciplinary segregation unit. ECF 94-1 at 135-38. Conway provided the names of several inmates who were threatening his life, including Long and Polo. *Id.* at 138. Unit Team Manager Schneider asserts he investigated this protective custody request by looking into the incident regarding the assault that had landed Conway outside of protective custody in April 2020. ECF 82 at 4. But Unit Team Manager Schneider does not explain why this event was relevant to whether Conway required protective custody on July 9, 2020. Unit Team Manager Schneider also asserts he investigated the July 9 protective custody request by speaking with staff and other unit team members in D-cell house, and found no one had seen or heard of any of the issues Conway alleged. ECF 82 at 4. After completing this investigation, Unit Team Manager Schneider denied the July 9 protective custody request, asserting that Conway was appropriately placed in the disciplinary segregation unit and that he could resubmit a protective custody request once he was off disciplinary status. *Id.* at 135. However, Unit Team Manager Schneider provides no

9

evidence an inmate on disciplinary status is ineligible for protective custody. After Unit Team Manager Schneider denied Conway's July 9 protective custody request, Conway sent Unit Team Manager Schneider a Request for Interview, providing him the cell locations of the offenders making threats against him and asking him to review the cameras to confirm his allegations that offenders were taking his property and food trays. ECF 103-1 at 2. There is no evidence indicating whether Unit Team Manager Schneider received or responded to this Request for Interview, but a reasonable jury could conclude Unit Team Manager Schneider received this document based on the fact that it was addressed and sent to him.

Unit Team Manager Schneider argues he was not deliberately indifferent because he thoroughly investigated Conway's claims by speaking with prison staff and found they were unsubstantiated. ECF 95 at 12-13. Conway responds that Unit Team Manager Schneider did not conduct a thorough investigation of his July 9 protective custody request, as he would have known the threats were legitimate if he had reviewed the camera footage and met with Conway to discuss his allegations, as was required under the prison's policy. ECF 103 at 11-12. Unit Team Manager Schneider concedes he did not speak with Conway regarding his July 9 protective custody request, but argues that, even assuming this violated prison policy, a violation of prison policy does not necessarily amount to an Eighth Amendment violation. ECF 104 at 5.

Here, construing the facts in the light most favorable to Conway, a reasonable jury could conclude Unit Team Manager Schneider was deliberately indifferent to Conway's safety for rejecting his July 9 protective custody request without adequately

investigating his allegations. Specifically, it is undisputed Unit Team Manager Schneider never met with Conway regarding his July 9 protective custody request, which violated prison policy. *See* ECF 33-1 at 109-111. While a violation of prison policy does not necessarily violate the Eighth Amendment, it may support an Eighth Amendment claim. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (*en banc*) (failure to "follow an existing protocol" provides "circumstantial evidence that a prison [official] knew of a substantial risk of serious harm"). Moreover, if Unit Team Manager Schneider had met with Conway, Conway could have substantiated his allegations by providing additional details and showing Unit Team Manager Schneider the written threats he had received. ECF 94-1 at 134. Unit Team Manager Schneider also could have interviewed the offenders Conway identified in his protective custody request as making threats against him and reviewed the camera footage showing that Conway's food trays were being taken by other inmates. Based on this evidence, a reasonable jury could conclude Unit Team Manager Schneider was deliberately indifferent for concluding Conway's allegations were unsubstantiated after only speaking with some members of prison staff and finding they had not heard of Conway's allegations.

  Unit Team Manager Schneider also argues he is entitled to qualified immunity because "[i]t is not clearly established that failing to move an offender to a designated protective custody unit when the offender (1) is already residing in disciplinary segregation in an isolated one-person cell and always escorted everywhere by officers, (2) was transferred to a different range to remove the threats claimed, and (3) does not provide specific information about threats causing the Plaintiff to fear for his safety

11

constitutes a violation of the Eighth Amendment as no specific threat of harm has been received." ECF 95 at 14-16. However, Conway provides evidence he informed Unit Team Manager Schneider he was being threatened by specific inmates in the disciplinary segregation unit, and Unit Team Manager Schneider denied his protective custody request without ever interviewing him regarding his allegations. Crediting Conway's version of events, there are disputed material facts regarding whether Unit Team Manager Schneider was deliberately indifferent for rejecting Conway's protective custody request without conducting an adequate investigation. *See Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) ("[t]he court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right] because the ordinary rules governing summary judgment apply in that situation"); *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (holding that "a defendant may not avoid trial on the grounds of qualified immunity" if there are genuine issues of fact regarding the elements of the deliberate-indifference claim). Accordingly, because a reasonable jury could conclude Unit Team Manager Schneider was deliberately indifferent to Conway's safety for rejecting his protective custody request without conducting an adequate investigation, the summary judgment motion is denied as to Conway's claim against Unit Team Manager Schneider.

### *Sgt. Wolford*

Sgt. Wolford argues he was not deliberately indifferent to Conway's safety because he spoke with Conway about his concerns and there is no evidence he was responsible for denying any of Conway's protective custody requests. ECF 95 at 13-14.

In his response to the summary judgment motion, Conway does not argue that Sgt. Wolford was deliberately indifferent and states he only opposes the defendant's summary judgment motion "as it pertains to Defendant Schneider's liability and Conway's request for an injunction." ECF 103 at 1, 18. Thus, because there is no evidence Sgt. Wolford was responsible for denying any of Conway's protective custody requests and Conway does not argue or provide any evidence Sgt. Wolford was deliberately indifferent to his safety, summary judgment is warranted in favor of Sgt. Wolford.

### *Correctional Officer Grams*

Correctional Officer Grams argues summary judgment is warranted in her favor because she did not have any knowledge of a specific threat of harm to Conway, as her only involvement in this case is that Conway asked her to deliver his paperwork to Sgt. Wolford. ECF 95 at 14. Conway does not argue or provide any evidence that Correctional Officer Grams knew of a specific threat of harm, and asserts he is not opposing the summary judgment motion as to Correctional Officer Grams. ECF 103 at 1, 18. Thus, because there is no evidence Correctional Officer Grams knew of a specific threat of harm to Conway, summary judgment is warranted in her favor. *See Pope*, 86 F.3d at 92.

### *Warden Neal*

Conway is proceeding against Warden Neal "for permanent injunctive relief related to his need for protection from other inmates[.]" ECF 49 at 8. Warden Neal argues summary judgment is warranted in his favor because this claim is now moot, as

Conway is now housed in the protective custody unit and his safety is no longer in jeopardy.

Here, the undisputed facts show: (1) Conway was housed in the protective custody unit from May 2018 until April 2020, when he was transferred to the disciplinary segregation unit for assaulting another inmate (ECF 94-1 at 24-25); (2) on October 8, 2020, Unit Team Manager Schneider concluded Conway's safety was not guaranteed at the disciplinary segregation unit and granted his protective custody request (*Id.* at 89, 143-44); (3) Conway has been housed in the protective custody unit since October 9, 2020 (*Id.* at 93); (4) Conway has not received any threats while in the protective custody unit (*Id.* at 103); (5) none of the offenders who previously threatened Conway are housed in the same protective custody block as him (*Id.* at 103-04); and (6) Conway does not intend to do anything that could cause him to be sent back to the disciplinary segregation unit (ECF 103 at 11). These facts demonstrate Conway is currently being protected from the inmates who previously threatened him.

In his response, Conway agrees he is not currently facing any threats in the protective custody unit. However, he argues this claim is not moot because it is capable of repetition, as it is likely he will be retransferred to the disciplinary segregation unit at some point. ECF 103 at 17. The "capable-of-repetition" exception to the mootness doctrine applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Ciarpaglini v. Norwood*, 817 F.3d 541, 546 (7th Cir. 2016). However, Conway provides no evidence

other than his own speculation that he will likely be retransferred to the disciplinary segregation unit. *See Preiser v. Newkirk*, 422 U.S. 395, 403 (1975) (allegations of a likely retransfer may not be based on mere speculation). The undisputed facts show Conway is currently being protected from other inmates in the protective custody unit, and there is no evidence the prison is likely to remove him from the protective custody unit before his safety can be guaranteed. Based on this evidence, Conway has not shown a "reasonable expectation" he will be removed from the protective custody unit and retransferred to the disciplinary segregation unit before his safety can be guaranteed.

Accordingly, Conway's injunctive-relief claim against Warden Neal is now moot. Summary judgment must be granted in favor of Warden Neal.

For these reasons, the court:

(1) DENIES the motion for partial summary judgment (ECF 94) with respect to Conway's claim against Unit Team Manager Schneider but GRANTS it in all other respects;

(2) GRANTS summary judgment in favor of Warden Neal, Sergeant Wolford, and Correctional Officer Graham and dismisses them from this action; and

(3) REMINDS the parties this case is now proceeding only on Conway's claim against Unit Team Manager Joseph Schneider, Todd Marsh, Amber Siuda, and Pamela Bane "in their personal capacities for monetary damages for failing to protect him from harm by other inmates in violation of the Eighth Amendment[.]"

SO ORDERED on September 2, 2022

/s/ JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT